AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>KEVIN PATRICK WILSON<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)         3:24-mj- 1307-MCR<br>)<br>)<br>) |

FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

7.25.2024

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 24, 2024__ in the county of __St. Johns__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Attempted online enticement to engage in illegal sexual activity |

This criminal complaint is based on these facts:
See affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel Moxley, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 25, 2024

_____
*Judge's signature*

City and state: Jacksonville, Florida        Monte C. Richardson, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Daniel Moxley, being duly sworn, state as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since July 2017. I am currently assigned to the Jacksonville, Florida Division of the FBI, where I conduct investigations in the area of child pornography. Prior to this assignment, I was employed as an Intelligence Analyst and Management and Program Analyst for the FBI for approximately 7 years. I have bachelor's degrees in economics and political science. I received law enforcement training from the FBI Academy at Quantico, Virginia. A substantial portion of my duties are dedicated to investigating cases involving crimes against children under the auspices of the FBI's "Innocent Images" National Initiative. Since becoming a Special Agent, I have worked with experienced Special Agents who also investigate child exploitation offenses, as well as with experienced Assistant United States Attorneys who prosecute these offenses. I have been involved in searches of residences and devices pertaining to the solicitation, production, receipt, distribution, and possession of child pornography, as well as the online enticement, and attempted enticement, of minors to engage in sexual activity through the execution of search warrants. I have also worked in an undercover capacity in the investigation of matters involving the solicitation, production, receipt, distribution, and possession of child pornography, as well as the online enticement, and attempted enticement, of minors to engage in sexual activity.

2. I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, and 2422(b). As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

3. The statements contained in this affidavit are based on information I obtained from my personal observations as well as from records and information directly provided to me by other law enforcement officers and personnel. This affidavit is being submitted for the limited purpose of establishing probable cause for the filing of a criminal complaint, and I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that KEVIN PATRICK WILSON has committed a violation of 18 U.S.C. § 2422(b), that is, attempted online enticement of a minor to engage in illegal sexual activity.

4. I make this affidavit in support of a criminal complaint against KEVIN PATRICK WILSON, that is, on or about July 24, 2024, in the Middle District of Florida, KEVIN PATRICK WILSON, using facilities of interstate commerce, that is, by cellular telephone, did knowingly attempt to persuade, induce, entice, and coerce a person whom KEVIN PATRICK WILSON believed had not reached the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense under the laws of the state of Florida, that is, the crime of lewd or lascivious battery against a person 12 years of age or older but less than 16 years of age, in

2

violation of Section 800.04(4)(a), Florida Statutes, all in violation of 18 U.S.C. § 2422(b).

5.    On July 24, 2024, I was contacted by St. Johns County Sheriff's Office Detective Brandon Almaguer regarding a proactive undercover investigation he was engaged in designed to identify individuals attempting to sexually exploit children using the Internet. Det. Almaguer sent me a series of documents, reports, and other materials, and during my review of these materials, and from conversations I had with Detective Almaguer, I learned, among other things, the following:

    a.    On or about July 20, 2024, a Facebook user posted a public message that read "Looking for a Math and writing tudor for 6 grader? Thank you" in a Facebook group titled "St Augustine Jobs."

    b.    On the same day, Facebook user "[K] Wilson" commented on the public post with a message that read "Hi please text my husband Kevin on his cell phone number is 407-638-0203 we live in st Augustine."

    c.    On July 21, 2024, the Facebook user who posted the public message contacted the user of telephone number 407-638-0203 and a text message conversation ensued. During the text message conversation, the Facebook user who posted the public message immediately told the user of telephone number 407-638-0203 that she was seeking educational assistance for an 11-year-old female child. The user of telephone number 407-638-0203 identified himself as "Kevin," and provided a photo of an adult male with short dark hair and facial hair. "Kevin" also requested a photo of the 11-year-old female child, and the text message conversation concluded

3

shortly thereafter.

d. The Facebook user who posted the public message then contacted the St. Johns County Sheriff's Office and provided screenshots of the interaction on Facebook and screenshots of the text message conversation with "Kevin" to investigators.

e. On July 24, 2024, Det. Almaguer was acting in the capacity of an undercover persona and contacted "Kevin" via text message at telephone number 407-638-0203, and a conversation ensued.

f. During this conversation with "Kevin," Det. Almaguer portrayed a guardian with access to a 12-year-old female child and inquired about tutoring for the child. Det. Almaguer made copies of and preserved as evidence the photos, videos, and the private text messages exchanged between himself and telephone number 407-638-0203. Summaries of the messages are provided below but are attached in their entirety as Exhibit A.

g. After Det. Almaguer initiated the conversation about tutoring, "Kevin" began discussing sexual topics involving the purported 12-year-old female child, sending messages that read, " "I can teach her how to have sex," "Do you want to be the first to pop her chairy," "I am good for that would you want me to fuck her pussey or ass first," and "We can teach her how to kiss us on our lips and if you want we can also teach her how to kiss and suck on our ducks if you want her to lean that," which "Kevin" clarified by sending a text message that read "I ment to say dick."

h. Also, during the conversation, Det. Almaguer and "Kevin"

4

discussed meeting and ultimately agreed to meet at a predetermined location during the evening of July 24, 2024, for "Kevin" to perform sexual acts with the purported 12-year-old female child.

    i.    During the conversation, Det. Almaguer and "Kevin" had several conversations over telephone calls. During the first call, "Kevin" requested the purported 12-year-old female child's telephone number, which Det. Almaguer provided via text message.

    j.    Following the conclusion of the first telephone call with "Kevin," Det. Almaguer continued communications with "Kevin," portraying the guardian of the 12-year-old female child in one text message conversation and portraying the 12-year-old female child in another text message conversation. Det. Almaguer portrayed both undercover personas concurrently while engaging in conversations with "Kevin."

    k.    During the text message conversation with the purported 12-year-old female child, "Kevin" discussed topics that included, but were not limited to, the "child" taking a bath or shower with him, spanking the "child," the "child" being naked in front of him, and sizes of the "child's" bra and underwear. This conversation is attached in its entirety as Exhibit B.

    l.    Also on July 24, 2024, St. Johns County Sheriff's Office Detective M. Preston engaged in a voice call conversation with "Kevin." During this voice conversation, Det. Preston portrayed the 12-year-old female child. During the conversation, "Kevin" told the "child" that he wanted to kiss the "child" on the mouth and the front area of the "child's" thong. Det. Preston asked "Kevin" to clarify if he

meant "vagina," to which he confirmed was accurate. Additionally, during the voice call, "Kevin" told the "child" he wanted to take a shower with her.

  m. On the same date, Det. Almaguer conducted law enforcement database queries for telephone number 407-638-0203. Results concluded the telephone number was assigned to "[K.] Wilson," with a physical address in Ponte Vedra, Florida. Additionally, Det. Almaguer conducted social media queries for telephone number 407-638-0203. The results indicated there was a Cash App account for "Kevin Wilson."

  n. Det. Almaguer queried the Florida Driver and Vehicle Information Database (DAVID) for registered occupants of the Ponte Vedra, Florida residence. Results listed K. Wilson, Kevin Patrick Wilson, and another individual, as occupants of the residence.

  o. Det. Almaguer compared the photos sent by user "Kevin," from telephone number 407-638-0203 to the Facebook user who posted on the public Facebook page and to the ones he received while acting in an undercover capacity to the Florida DAVID photo of WILSON, and determined all three photos depict the same person, that is, KEVIN PATRICK WILSON.

  6. Also on July 24, 2024, FBI Staff Operations Specialist B. Forte conducted a query of law enforcement databases for information related to telephone number 407-638-0203. Results concluded "Kevin Wilson" with a physical address in Ponte Vedra, Florida is associated to that telephone number.

  7. Additionally, on the same day, I compared both photos "Kevin" sent

6

from telephone number 407-638-0203, of the adult male during the text message conversations with the Facebook user who posted the public message and with Det. Almaguer, while working in an undercover capacity, to the Florida DAVID photo of WILSON. Based on my review, I believe that the two photos sent by user "Kevin" and the Florida DAVID photo identified as KEVIN PATRICK WILSON, all depict the same person.

8. Also on July 24, 2024, I reviewed Oviedo Police Report 2017400000497, dated March 21, 2017, that listed WILSON as the defendant of an incident involving a 13-year-old female child. According to the report, WILSON was in communication with a 13-year-old female child and discussed meeting her to take photos of her in her bra and underwear. WILSON also discussed meeting the child and removing her bra. WILSON attempted to meet with the child and was taken into custody by the Oviedo Police Department. He ultimately received an adjudication withheld for the unlawful use of two way communication device to facilitate a felony and was sentenced to probation for this offense.

9. Later on July 24, 2024, I met with Det. Almaguer and other members of the St. Johns County Sheriff's Office near the predetermined meeting location established between "Kevin," identified as KEVIN PATRICK WILSON, and Det. Almaguer, in his undercover capacity. Det. Almaguer told me that WILSON had advised him that he was on his way to meet the purported 12-year-old female child and her guardian.

10. Shortly thereafter, Det. Almaguer told me that the St. Johns County

7

Sheriff's Office took WILSON into custody without incident in the parking lot of the predetermined meeting location.

11. I traveled to the predetermined meeting location and observed a Blue Ford Fiesta, bearing Florida license plate Y851GV, parked in a parking spot near tennis courts. I reviewed the Florida DMV database record for WILSON and confirmed a 2016 Blue Ford 4-door vehicle, bearing Florida license plate Y851GV, was registered to WILSON. The driver's side door was open and an Android cellular phone in a red case was sitting on the roof of the vehicle.

12. Upon arriving, St. Johns County Sheriff's Office Det. Dennis Camden told me that the Android cellular phone was resting on the console of the Blue Ford Fiesta when WILSON was taken into custody.

13. WILSON was placed in a patrol car by St. Johns County Sheriff's Office Detectives and transported to the St. Johns County Sheriff's Office, located at 4015 Lewis Speedway, Saint Augustine, Florida 32095. Shortly thereafter, Det. Almaguer and I met with WILSON for an interview. This interview was recorded on audio and video. After being advised of his constitutional rights, WILSON acknowledged his rights verbally, waived those rights, and agreed to speak with us. During this interview, WILSON stated, in summary and among other things, the following:

    a. WILSON's telephone number is 407-638-0203 and his wife's telephone number is 407-692-XXXX. WILSON has his own cellular phone, and his wife has her own cellular telephone. WILSON's wife also has a Facebook account. WILSON does not have a Facebook account.

8

  b. WILSON was at work today from 7:00 AM to 7:00 PM at an automotive shop on County Road 210. WILSON's wife works at a different location and worked today from 8:00 AM to 5:00 PM. During the time both were at work, they were away from each other until she picked him up after work.

  c. WILSON's wife "never uses" his phone and he "never uses" her phone. Neither cellular phone has a passcode. WILSON uses a gray Samsung Android phone with a red case but does not know the model number.

  d. WILSON had a conversation with someone about conducting "handywork" at the house and tutoring his daughter. WILSON recalls him stating the daughter was in 6th grade. WILSON estimated a 6th grader to be "12 to 13" years old.

  e. WILSON initially stated he "never" uses his wife's Facebook account, but immediately corrected himself and stated he uses his wife's Facebook account to post his name and telephone number for services in a Beacon Lake subdivision Facebook group. WILSON recognized a Facebook account in the name of "[K] Wilson" as his wife's Facebook account.

  f. WILSON provided verbal consent to search his Android cellular phone.

  g. WILSON spoke to an individual about tutoring and "other stuff" that "didn't make sense," which he clarified as "spanking" the individual's daughter and "going in the bathtub" with her. WILSON stated the individual also expressed interest in having sex with the child.

  h. WILSON stated the conversation started around 9:00 AM this

9

morning (July 24, 2024) and was about "handyman work" and "tutoring."

       i.     WILSON stated the individual told WILSON he wanted WILSON to have sex with his daughter and would need a condom. The individual wanted WILSON and him to take a shower together and teach her how to "be a grown up" that night.

      j.     WILSON was "just joking around" when he talked about having sex with the individual's daughter but did not intend to have sex with her.

      k.     WILSON spoke to the daughter on the telephone. WILSON told the daughter that he was going to teach her how to have sex because her dad or grandpa requested WILSON to teach her.

      l.     WILSON had his cellular phone all day and it was around him all day long. WILSON acknowledged he was talking to the "dad" about having sex with the 12-year-old girl. WILSON texted and called the 12-year-old girl. WILSON discussed having sex with the 12-year-old girl.

      m.     WILSON has "both of their phone numbers" on his phone, which he clarified was the phone with the red case. Det. Almaguer conducted a cursory review of the cellular phone and observed the text message conversations WILSON had with him acting in the undercover capacities of the guardian of the 12-year-old female child and 12-year-old female child.

      n.     WILSON stated the "grandpa" offered him $500.00 to have sex

with the 12-year-old girl while they were speaking on the phone.[1] WILSON stated "he" wanted him to "have a shower" and kiss her. WILSON estimated he had four voice calls with "him" and two voice calls with the 12-year-old.

o.  WILSON acknowledged he sent a text message that read "we can teach her to suck our dick."

p.  WILSON acknowledged he was going to take a shower with the 12-year-old when he arrived at the location but was apprehended by law enforcement. WILSON acknowledged this is the first time this sort of thing has happened.

q.  WILSON acknowledged talking about engaging in sexual activity with the 12-year-old child while on the phone, specifically her groin or vagina area covered by her thong underwear.

r.  WILSON sent all of the text messages. WILSON had the conversation with the "child" about her vagina, taking a shower with her, and spanking her.

s.  When asked if this is the first time WILSON has showed up to have sex with a 12-year-old, WILSON responded, "this is the only time."

t.  WILSON stated he has helped 20 kids with "schooling" in a group setting but was "just joking around" when he stated during one of the calls that he met eight other kids to conduct similar acts.

u.  WILSON has talked to someone about tutoring as recently

---

[1] I reviewed the recordings of the voice calls along with all the messages exchanged and there was no discussion of $500 for anything during the conversations.

11

about a week ago. WILSON estimated at least 3 times per week someone comes into the automotive shop that he works at and asks if they know someone who is available as a tutor.

    v.    WILSON confirmed he had the conversation with the person requesting tutoring for their 11-year-old daughter.

    w.    WILSON initially stated he did not post his name and telephone number on a Facebook post requesting a tutor but confirmed that he recognized the post. Later, WILSON admitted he did post his name and telephone number on the Facebook post.

    x.    WILSON "would have just walked away" if the situation was real and only went "just to see."

    y.    WILSON told his wife he was going to "give a quote" tonight and he is unsure why he told her that. WILSON is unsure why he was not honest with his wife, but she would have left him if he told her he was going to have sex with a child.

    z.    WILSON stated if law enforcement would have not shown up at the predetermined meeting location, he would have been paid about $600.00 cash to have sex with the child.

    aa.    WILSON acknowledged there was minimal talk about tutoring and the discussion the majority of the day was about sex with the child.

    bb.    WILSON acknowledged he went to the predetermined location because he thought the "dad" was going to offer him around $600.00 to have sex with her. WILSON stated, "on one hand I need money…but on this hand, its immoral and

illegal to have sex with minors."

cc.  WILSON agreed that he brought up the sex talk first about the 12-year-old girl, but he was "just joking around." WILSON acknowledged he went to the predetermined location thinking he was going to get paid to have sex with the 12-year-old girl, but then immediately said he was not going there to have sex with a 12-year-old girl.

dd.  WILSON stated in 2017 he met a 13-year-old girl who was going to model in her bra and underwear while he took photographs of her, but he was "just being silly." WILSON is unsure why he continues to put himself in these types of situations. WILSON does not "have a fetish" for that age group but is unsure why he talks about having sex with 12- and 13-year-old girls. WILSON stated he is not sexually attracted to children. WILSON does not masturbate to images of children.

ee.  WILSON provided verbal and written consent to conduct a complete search of his Samsung Galaxy A15 5G cellular phone, including applications and all content stored on the device.

14.  Also on July 24, 2024, Det. Preston spoke to K. Wilson at her residence following WILSON's arrest. Det. Preston told me that K. Wilson told her that K. Wilson and WILSON each have separate cellular phones, her cellular phone is password protected, and they do not share cellular phones. K. Wilson dropped WILSON off for work at 7:00 AM this morning and picked him up at 7:00 PM. The Facebook account in the name "[K] Wilson" was hers but she did not make the comment on the Facebook post requesting tutoring. WILSON told K. Wilson that he

13

left the house that evening to provide someone with a quote for handyman services. Det. Preston also played a voice recording of a telephone call between Det. Almaguer and WILSON and K. Wilson confirmed the voice on the recording was WILSON's voice.

15. Based upon the foregoing facts, I have probable cause to believe that on July 24, 2024, in the Middle District of Florida, KEVIN PATRICK WILSON, using facilities of interstate commerce, that is, by cellular telephone, did knowingly attempt to persuade, induce, entice, and coerce a person whom KEVIN PATRICK WILSON believed had not reached the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense under the laws of the state of Florida, that is, the crime of lewd or lascivious battery against a person 12 years of age or older but less than 16 years of age, in violation of Section 800.04(4)(a), Florida Statutes Florida Statutes, all in violation of 18 U.S.C. § 2422(b).

_____
DANIEL MOXLEY, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 25th day of July, 2024, at Jacksonville, Florida.

_____
MONTE C. RICHARDSON
United States Magistrate Judge

14